UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JITENDRA JAIN,
MANISH ARORA,
SCARIYA KUMARAMANGALAM,     Case No.
HARSH DATTA,
BALVANT ARORA,

    Plaintiffs,

v.

NEXGEN MEMANTINE INC.,

SUREN AJJARAPU,
ANNAPURNA GUNDLAPALLI,
GAJAN MAHENDIRAN,
TRXADE, INC., WESTMINSTER
PHARMACEUTICALS, LLC.

    Defendants.

# COMPLAINT

The Plaintiffs, by and through their undersigned counsel, aver as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Jitendra Jain is a resident of Madison County, Alabama.

2. Plaintiff Manish Arora is a resident of Limestone County, Alabama.

3. Plaintiff Scariya Kumaramangalam is a resident of Madison County, Alabama.

4. Plaintiff Harsh Datta is a resident of Prince William County, Virginia.

5. Plaintiff Balvant Arora is a resident of Stafford County, Virginia.

6. Upon information and belief, Defendant Suren Ajjarapu a resident of 19814 Sea Rider Way Lutz, FL 33559.

7. Upon information and belief, Defendant Annapurna Gundlapalli is a resident of Hillsborough County, Florida with an unknown address.

8. Upon information and belief, Defendant Gajan Mahendiran is a resident of 4427 Corral Road Warrenton, Virginia 20187.

9. Nexgen Memantine is a corporation incorporated in Wyoming with its principal place of business in 8913 Regents Park Drive Suite # 550 Tampa, FL 33647.

10. Trxade, Inc. is a corporation incorporated in Florida with offices located at 3840 Land O' Lakes Blvd, Land O' Lakes, Florida 34639.

11. Westminster Pharmaceuticals, LLC is headquartered in Tennessee.

12. This Court has proper jurisdiction under 28 U.S.C. § 1331 as there are civil actions arising under the Constitution, laws, or treaties of the United States.

13. This District Court is the proper venue under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

### Background

14. In January of 2016 Nexgen Memantine solicited investments from Jitendra Jain, Manish Arora, Scariya Kumaramangalam, Harsh Datta, Balvant Arora (collectively "Plaintiff Investors"), through Suren Ajjarapu and Gajan Mahendiran, by the sale of preferred stock to all named Plaintiffs.

15. Plaintiff investors signed contracts that are the same or substantially similar form to Exhibit H.

16. Gajan Mahendiran engaged Plaintiff Investors to invest in Nexgen Mementime.

17. Plaintiff Investors were forwarded documents entitled "Nexgen Teaser" along with a presentation of Trxade which was used as an inducement for investment.

18. The primary business of Nexgen Memantine was to secure FDA approval for the production of a generic version of Memantine, an FDA approved drug to treat Alzheimer's.

19. Gajan Mahendrian is President and Treasurer of Nexgen Memantine.

20. Gajan Mahendrian is also a managing member for Westminster Pharmaceuticals, LLC.

21. Westminster Pharmaceuticals is Trxade Inc's wholly-owned distribution arm.

22. Nexgen Memantine partnered with Westminster Pharmaceuticals to distribute Nexgen products, and used this as a marketing pitch to solicit investments.

23. Nexgen Memantine through its President, Gajan Mahendiran promised Westminster Pharmaceuticals' distribution network would decrease risk in Plaintiff Investors securities, by, among other things, stating: "[r]emember I want to point out that the security in this molecule for you and your partners investments comes from the fact we already have distribution network already built." *See* Exhibit A.

24. The board of directors of Nexgen Memantine knew at the time they solicited investments, that their drug would not be approved by the Food and Drug Administration.

25. Gajan Mahendiran, President and Treasurer of Nexgen Memantine, emptied the bank accounts of Nexgen Memantine.

26. Annapurna Gundlapalli is an officer of Nexgen Memantine. In that capacity he serves as both Vice-President and Secretary.

27. Suren Ajjarapu was an apparent agent of Nexgen Memantine by claiming to be the Chief Executive Officer of Nexgen Memantine in an email soliciting investments in Nexgen Memantine.

28. Suren Ajjarapu is the Chief Executive Officer of Trxade, Inc.

## Material False Statements

29. Suren Ajjarapu, as part of an effort to solicit the sale of securities and secure investments for Nexgen Memantine, regularly engaged in e-mail and phone conversations with the Plaintiffs.

30. Suren Ajjarapu and Gajan Mahendrian through Nexgen Memantine in a false and misleading statement to the plaintiffs said: "Based on our wholesale distributors who are already buying from us, we have already reached well beyond $ 2 million dollars in goods they will be purchasing." Exhibit C.

31. Suren Ajjarapu and Gajan Mahendrian through Nexgen Memantine in a false and misleading statement to the plaintiffs said: "Currently Nexgen has partnered with Westminster to distributor their products thru wholesale partnership that controls 5,000 independent pharmacies and 27 suppliers utilizing their trading platform, with the number of registered users growing on a monthly basis." Exhibit E.

32. Ajjarapu and Mahendiran also made material misrepresentations about Nexgen Memantine and the securities pitched to the Plaintiff Investors, namely that in exchange for investing in the company, Plaintiff's would get 12% interest annually plus shares in the company.

33. Gajan Mahendrian on behalf of Nexgen Memantine in a false and misleading statement to the plaintiffs stated the plaintiff's investments were to be used for the production of medicine, packaging, from India to the United States and distribution of medicine in the United States.

34. Suren Ajjarapu and Gajan Mahendrian on behalf of Nexgen Memantine offered a guarantee on the Plaintiffs' investment with the intent to mislead the Plaintiff Investors into thinking their investment had little to no risk. *See* Exhibit H.

35. Suren Ajjarapu and Gajan Mahendiran materially knew that the generic version of the drug Memantine was not or would not be approved by the Food and Drug Administration ("FDA"), and omitted this material information while soliciting investors for Nexgen Memantine.

**Plaintiff's Reliance on False Statements**

36. Jitendra Jain invested seventy-five thousand dollars ($75,000.00) in Nexgen Memantine Inc.

37. Manish Arora invested one-hundred thousand dollars ($100,000.00) in Nexgen Memantine Inc.

38. Scariya Kumaramangalam invested one-hundred thousand dollars ($100,000.00) in Nexgen Memantine Inc.

39. Harsh Datta invested one-hundred thousand dollars ($100,000.00) in Nexgen Memantine Inc.

40. Balvnt Arora invested fifty thousand dollars ($50,000.00) in Nexgen Memantine Inc.

41. The Plaintiffs first came to know of possible fraud in late 2018, when an email was sent to all investors calling a special meeting of shareholders of Nexgen Memantine, Inc. on November 27, 2018.

42. Gajan Mahendiran fraudulently transferred assets, namely money, from Nexgen Memantine to himself labeling the transfers "Trxade Invest." Said money left the accounts of Nexgen Memantine with no justification. Said transfers amounting to $1,185,000.00 as follows:

   a. April 1, 2016 $135,000.00

   b. May 3, 2016 $500,000.00

   c. June 23, 2016 $250,000.00

   d. September 28, 2016 $200,000.00

   e. December 20, 2016 $100,000.00

43. Gajan Mahendiran was the principal of a promissory note to Trxade, Inc. in the amount of $1,500,000.00.

44. The Defendant Gajan Mahendiran has recently informed Plaintiffs' that Nexgen Memantine, Inc. was started by Suren Ajjarapu.

45. Defendant Gajan Mahendiran has recently informed Plaintiffs' that he [Mr. Mahendiran] has investments in other companies with Suren Ajjarapu including, but not limited to, Nexgen Lifesciences, Trxade, along with some others.

### COUNT I - FRAUD UNDER SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 THEREUNDER

(PLAINTIFF INVESTORS AGAINST SUREN AJJARAPU, GAJAN MAHENDRIAN, NEXGEN MEMANTINE INC., ANNAPURNA GUNDLAPALLI, WESTMINSTER PHARMACEUTICALS, LLC, AND TRXADE, INC.)

46. Plaintiff Investors reallege and incorporate all allegations and averments contained in paragraphs 1 through 43.

47. Suren Ajjarapu and Gajan Mahendiran materially knew that the generic version of the drug Memantine was not or would not be approved by the Food and Drug Administration ("FDA"), and omitted this material information while soliciting investors for Nexgen Memantine.

48. Ajjarapu and Mahendiran also made material misrepresentations about Nexgen Memantine and the securities pitched to the Plaintiff Investors, namely that in exchange for investing in the company, Plaintiff's would get 12% interest annually plus shares in the company.

49. Suren Ajjarapu and Gajan Mahendrian through Nexgen Memantine in a false and misleading statement to the plaintiffs said: "Based on our wholesale distributors who are already buying from us, we have already reached well beyond $ 2 million dollars in goods they will be purchasing."Exhibit C.

50. Suren Ajjarapu and Gajan Mahendrian through Nexgen Memantine in a false and misleading statement to the plaintiffs said: "Currently Nexgen has partnered with

Westminster to distributor their products thru wholesale partnership that controls 5,000 independent pharmacies and 27 suppliers utilizing their trading platform, with the number of registered users growing on a monthly basis." Exhibit E.

51. Ajjarapu and Mahendiran solicited investments in Nexgen Memantine using the above false representations and omissions, with the intention to fraudulently gain Plaintiff Investors' funds.

52. Upon information and belief, Annapurna Gundlapalli, as Vice President and Director of Nexgen Memantine, was aware of and aided in the fraudulent sale of securities to the Plaintiff Investors.

53. The FDA's approval to produce and sell the generic version of Memantine, as well as the supposed 12% annual interest on investments, were material aspects of the securities sales made by Ajjarapu and Mahendiran, on behalf of Nexgen Memantine.

54. Nexgen Memantine and Westminster Pharmaceuticals marketed that the two companies had an agreement or partnership to use Westminster Pharmaceuticals' distribution network for the upcoming generic Memantine product. Upon information and belief, this partnership's sole purpose was to ease the concerns of potential investors such as the Plaintiffs, and to lend Westminster Pharmaceuticals' established credibility in the industry to Nexgen Memantine, which otherwise lacked such credibility. Exhibit A.

55. The Plaintiffs reasonably relied, to their detriment, on the material misrepresentations and omissions of Ajjarapu, Mahendiran, Gundlapalli, Nexgen Memantine, and Westminster Pharmaceuticals, and ultimately invested a combined total of $425,000 into NexGen Memantine.

56. Ajjarapu and Mahendiran's misrepresentations and omissions, made on behalf of Nexgen Memantine, were the cause of Plaintiff Investors' loss. Without any annual interest provided on the securities or possibility of FDA approval for the drug, the securities purchased by Plaintiff Investors were worth substantially less than Plaintiff Investors were led to believe while being solicited by Ajjarapu and Mahendiran.

57. Plaintiff Investors were further damaged when Mahendiran withdrew $1,185,000.00 from Nexgen Memantine to his personal bank account over the course of several months in 2016.

WHEREFORE, Plaintiff Investors respectfully request that this Court enter judgment against Defendants Suren Ajjarapu, Annapurna Gundlapalli, Gajan Mahediran, and Nexgen Memantine for fraud under section 28 U.S.C. § 78j and 17 C.F.R. § 240.10b-5, for compensatory damages for such securities paid for and investments made by Plaintiffs, plus the legal rate, together with attorneys' fees, cost, reasonable expenses, and further relief as this Court deems fair and just.

**COUNT II - JOINT AND SEVERAL LIABILITY UNDER 15 U.S.C. CODE § 78t**

(PLAINTIFF INVESTORS AGAINST TRXADE, INC.)

58. Plaintiff Investors reallege and incorporate all allegations and averments contained in paragraphs 1 through 31.

59. Westminster Pharmaceuticals is a wholly owned subsidiary of Trxade, Inc., and acts as Trxade, Inc.'s primary distributor in North America.

60. Suren Ajjarapu, who solicited Plaintiffs via email regarding the purchase of securities and investment in Nexgen Memantine, and who claimed to be the CEO of Nexgen Memantine (*see* Exhibit G), is actually the CEO of Trxade, Inc.

61. Upon information and belief, Trxade, Inc. by controlling Westminster Pharmaceuticals, its subsidiary, and Surren Ajjarapu, its CEO, furthered the scheme employed by Gajan Mahendiran, Annapurna Gundlapalli, and Nexgen Memantine to solicit the fraudulent sale of securities in Nexgen Memantine, and is joint and severally liable under 15 U.S.C.A. § 78t(a).

62. In furtherance of this claim, Plaintiff Investors point to Mehandiran's transfer of $1,185,000.00 from Nexgen Memantine, which were labeled as "Trxade Invest".

63. These payments to Trxade show that Trxade benefited from, and likely engaged in, unlawful activity indirectly through Mehandiran, Gunlapalli, and Nexgen Memantine through the fraudulent sale of securities, and is therefore also joint and severally liable under 15 U.S.C.A. § 78(b).

WHEREFORE, Plaintiff Investors respectfully request that this Court enter judgment against Defendant Trxade, Inc. for joint and several liability under 15 U.S.C. §§ 78t(a)-(b) for compensatory damages for such securities paid for and investments made by Plaintiffs, plus the legal rate, together with attorneys' fees, cost, reasonable expenses, and further relief as this Court deems fair and just.

### COUNT III - FRAUDULENT TRANSACTIONS OF SECURITIES
### §§ 517.301, 517.211, FLA. STAT.

(PLAINTIFF INVESTORS AGAINST SUREN AJJARAPU, GAJAN MAHENDRIAN, NEXGEN MEMANTINE INC., ANNAPURNA GUNDLAPALLI, AND WESTMINSTER PHARMACEUTICALS, LLC)

64. Plaintiffs reallege and incorporate all allegations and averments contained in paragraphs 1 through 31.

65. The Florida Securities and Investor Protection Act ("FSIPA") applies because there is a territorial nexus to the State of Florida: Nexgen Memantine has its principal place of business in Florida. Furthermore, NexGen Memantine solicited investments from residents of Florida. Florida has a legitimate interest in eliminating a base of fraudulent operations located within its borders.

66. Suren Ajjarapu and Gajan Mahendiran knew that the generic version of the drug Memantine was not submitted for application to the FDA, would never be approved by the Food and Drug Administration ("FDA") (because it was never filed for approval), and omitted this material information while soliciting investors for Nexgen Memantine.

67. Ajjarapu and Mahendiran also made material misrepresentations about Nexgen Memantine and the securities pitched to the Plaintiff Investors, namely that in exchange for investing in the company, Plaintiff's would get 12% interest annually plus shares in the company.

68. Upon information and belief, Annapurna Gundlapalli, as Vice President and Director of Nexgen Memantine, was aware of and aided in the fraudulent sale of securities to the Plaintiff Investors.

69. Nexgen Memantine and Westminster Pharmaceuticals marketed that the two companies had an agreement or partnership to use Westminster Pharmaceuticals' distribution network for the upcoming generic Memantine product. Upon information and belief, this partnership's sole purpose was to ease the concerns of potential investors such as the Plaintiffs,

and to lend Westminster Pharmaceuticals' established credibility in the industry to Nexgen Memantine, which otherwise lacked such credibility. Exhibit A.

70. The FDA's approval to produce and sell the generic version of Memantine, the supposed 12% annual interest on investments, and the participation of Westminster Pharmaceuticals were all material aspects of the securities sales made on behalf of Nexgen Memantine.

71. The Plaintiffs reasonably relied, to their detriment, on the material misrepresentations and omissions of Ajjarapu, Mahendiran, Gundlapalli, Nexgen Memantine, and Westminster Pharmaceuticals, and ultimately invested a combined total of $425,000 into NexGen Memantine.

72. Ajjarapu and Mahendiran's misrepresentations and omissions, made on behalf of Nexgen Memantine, were the cause of Plaintiff Investors' loss. With no annual interest provided on the securities to date, and with no possibility of FDA approval for the drug, the securities purchased by Plaintiff Investors were worth substantially less than Plaintiff Investors were led to believe while being solicited.

73. Plaintiff Investors were further damaged when Mahendiran withdrew $1,185,000.00 from Nexgen Memantine to his personal bank account over the course of several months in 2016.

74. As a consequence of the violation of Florida's securities laws, Suren Ajjarapu, Annapurna Gundlapalli, Gajan Mahediran, Westminster Pharamceuticals, and Nexgen Memantine, are joint and severally liable for compensatory damages for the securities and

investments made by Plaintiffs, plus interest thereon at the legal rate, costs, and reasonable attorneys' fees pursuant to Fla. Stat. § 517.211.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants Suren Ajjarapu, Annapurna Gundlapalli, Gajan Mahediran, Westminster Pharmaceuticals, and Nexgen Memantine for fraudulent sale of securities under Fla. Stat. §§ 517.301 and 517.211, for compensatory damages for such securities paid for and investments made by Plaintiffs, plus the legal rate, together with attorneys' fees, cost, reasonable expenses, and further relief as this Court deems fair and just.

### COUNT IV - SALE OF UNREGISTERED SECURITIES, §§ 517.07, 517.211, FLA. STAT.

(PLAINTIFF INVESTORS AGAINST SUREN AJJARAPU, GAJAN MAHENDRIAN, NEXGEN MEMANTINE INC., ANNAPURNA GUNDLAPALLI, AND WESTMINSTER PHARMACEUTICALS, LLC)

75.  Plaintiffs reallege and incorporate all allegations and averments contained in paragraphs 1 through 31.

76.  The Florida Securities and Investor Protection Act ("FSIPA") applies because there is a territorial nexus to the State of Florida: Nexgen Memantine has its principal place of business in Florida. Furthermore, NexGen Memantine solicited investments from residents of Florida. Florida has a legitimate interest in eliminating a base of fraudulent operations located within its borders.

77.  Suren Ajjarapu and Gajan Mahendiran solicited the sale of securities in NextGen Memantine that were not registered with the Office of Financial Regulation of the Financial Services Commission of the State of Florida, in violation of the requirements

provided in Fla. Stat. § 517.07. Furthermore, these securities were not exempt under Fla. Stat. § 517.051, were not sold in a transaction exempt under s. 517.601, and are not federally covered securities.

78. Upon information and belief, Annapurna Gundlapalli, as Vice President and Director of Nexgen Memantine, was aware of and aided in the fraudulent sale of securities to the Plaintiff Investors.

79. Nexgen Memantine and Westminster Pharmaceuticals marketed that the two companies had an agreement or partnership to use Westminster Pharmaceuticals' distribution network for the upcoming generic Memantine product. Upon information and belief, this partnership's sole purpose was to ease the concerns of potential investors such as the Plaintiffs, and to lend Westminster Pharmaceuticals' established credibility in the industry to Nexgen Memantine, which otherwise lacked such credibility. Exhibit A.

80. As a consequence of the violation of Florida's securities laws, Suren Ajjarapu, Annapurna Gundlapalli, Gajan Mahendiran, Nexgen Memantine, and Westminster Pharmaceuticals are joint and severally liable for rescissory damages and interest at the legal rate, costs, and reasonable attorneys' fees pursuant to Fla. Stat. § 517.211.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants Suren Ajjarapu, Annapurna Gundlapalli, Gajan Mahediran, and Nexgen Memantine for sale of unregistered securities under Fla. Stat. §§ 517.07 and 517.211 for compensatory damages for such securities paid for and investments made by Plaintiffs, plus the legal rate, together with attorneys' fees, cost, reasonable expenses, and further relief as this Court deems fair and just.

## COUNT V - PLAINTIFFS AGAINST NEXGEN MEMANTINE INC. FOR CONVERSION

81. Plaintiffs reallege and incorporate all allegations and averments contained in paragraphs 1 through 31.

82. The Plaintiffs invested a combined amount of $425,000 into Nexgen Memantine.

83. The Plaintiffs are shareholders of Nexgen Memantine.

84. Upon information and belief, Gajan Mahendiran, emptied the bank accounts of Nexgen Memantine.

85. Gajan Mahendiran took the money from Nexgen Memantine for his personal use.

86. The Plaintiffs requested their money back from Nexgen Memantine and Nexgen Memantine refused to give the Plaintiffs their money back.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Nexgen Memantine Inc. for conversion., for compensatory damages for such securities paid for and investments made by Plaintiffs, plus the legal rate, together with attorneys' fees, cost, reasonable expenses, and further relief as this Court deems fair and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury on all issues so triable.

Dated: September 25, 2020.

**FOUR RIVERS LAW FIRM**

By: /s/ Joseph F. Southron
    Joseph F. Southron
    Florida Bar No. 122109
    400 N. Ashley Drive, Suite 1900
    Tampa, Florida 33602
    Tel. (813) 773-5105
    Fax (813) 773-5103
    E-Mail: joe@fourriverslaw.com
    Secondary E-Mail:
    eservice@fourriverslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was filed on September 25, 2020 with the Court via CM/ECF system, which will send notification of such filing to all parties and counsel of record.

/s/ Joseph F. Southron
Joseph F. Southron
Florida Bar No. 122109
For the Firm