# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JITENDRA JAIN,
MANISH ARORA,
SCARIYA KUMARAMANGALAM,
HARSH DATTA,
BALVANT ARORA,

       Plaintiffs,                  Case No.: 8:20-cv-02263-VMC-JSS

v.

NEXGEN MEMANTINE, INC.,
SUREN AJJARAPU,
ANNAPURNA GUNDLAPALLI,
GAJAN MAHENDIRAN,
NEXGEN LIFESCIENCES, LLC
TRXADE, GROUP, INC.,
G&S COAL TRADERS, LLC,

       Defendants.
_____/

SUREN AJJARAPU,
ANNAPURNA GUNDLAPALLI,
NEXGEN MEMANTINE, INC.,
       Cross-Claim Plaintiffs,

v.

GAJAN MAHENDIRAN

       Defendant.
_____/

**DEFENDANTS/CROSS-CLAIM PLAINTIFFS
SUREN AJJARAPU, ANNAPURNA GUNDLAPALLI,
AND NEXGEN MEMANTINE, INC.'S AMENDED
<u>CROSSCLAIM AGAINST CO-DEFENDANT GAJAN MAHENDIRAN</u>**

Defendants/Cross-claim Plaintiffs Suren Ajjarapu, Annapurna Gundlapalli, and Nexgen Memantine, Inc., pursuant to Federal Rules of Civil Procedure 13(g) and 15(a), file this Amended Crossclaim against Co-Defendant Gajan Mahendiran ("Mahendiran"), stating as follows:

## PARTIES, RELEVANT NONPARTIES, AND JURISDICTION

1. Defendant Nexgen Memantine, Inc. ("Memantine") is a Wyoming corporation, with its principal place of business located at 8913 Regents Park Drive, Suite #550, Tampa, Florida 33647.

2. Defendant/Cross-Claim Plaintiff Suren Ajjarapu ("Ajjarapu") is a resident of Hillsborough County, Florida. Ajjarapu is a shareholder of Memantine.

3. Defendant/Cross-Claim Plaintiff Annapurna Gundlapalli ("Gundlapalli") is a resident of Hillsborough County, Florida.

4. Defendant Gajan Mahendiran ("Mahendiran") is a resident of Fauquier County, Virginia and is a former President, Director, and Treasurer of Memantine.

5. Co-Defendant Nexgen Lifesciences, LLC, ("Lifesciences"), is a Wyoming limited liability corporation, with its principal place of business located at 8913 Regents Park Drive, Suite #550, Tampa, Florida 33647.

6. This Court has jurisdiction under 28 U.S.C. § 1367(a) because this crossclaim is supplemental to the claims over which the Court has original jurisdiction in that the claims set forth below are so related to the claims in the action

within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

7. This Court has jurisdiction over Mahendiran because the actions that give rise to the Complaint and this Crossclaim were taken by Mahendiran in his position as President, Director, and/or Treasurer of Memantine, which has its principal place of business in Hillsborough County, Florida. Mahendiran is also subject to the jurisdiction of this Court by virtue of having operated, conducted, engaged in, or carried on a business or business venture in this state, and having committed a tortious act within this state. *See* Fla. Stat. § 48.193(1)(a).

8. This District Court is the proper venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Cross-claim Plaintiffs' claims occurred in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

### *Background*

9. Lifesciences is a pharmaceutical company that maintains the right to distribute certain FDA-approved pharmaceuticals and compounds within the United States.

10. Lifesciences is owned by multiple parties. The distribution of ownership interests is such that no single individual maintains a controlling or majority voting interest in Lifesciences.

11. Defendant Mahendiran is 50% owner of non-party Lifesciences. Other non-parties own the other 50%.

12. Lifesciences entered into an agreement (the "Agreement") with MSN, an Indian pharmaceutical company, to develop two Molecules and get FDA approval so that Lifesciences can distribute those medicines in the US.

13. Lifesciences anticipated that it would earn a substantial profit from the Agreement with MSN.

## *Nexgen Memantine's Creation and Purpose*

14. Memantine is a pharmaceutical company incorporated in 2015 to pursue FDA approval to manufacture and distribute a generic Alzheimer's treatment called Memantine (the "Proposed Treatment").

15. Lifesciences owns 80% of the outstanding shares of Defendant Memantine.

16. The remaining shares of Memantine are held by various individuals, including Plaintiffs (the "Memantine Investors").

17. Prior to the Memantine Investors purchasing shares of Memantine, various pieces of information were shared between Mahendiran and the Memantine

4

Investors and the Memantine Investors have alleged that Mahendiran made false representations during those exchanges.

18.     The Memantine Investors were aware that the Proposed Treatment was speculative and required FDA approval before any profit could be realized.

19.     Even though Memantine disclosed the speculative nature of the investment undertaken by the Memantine Investors, Memantine and Lifesciences created a back-up plan to protect the Memantine Investors' principal.

20.     To that end, Memantine and Lifesciences planned to utilize the profits from the Agreement with MSN to return the Memantine Investors' principal if the Proposed Treatment failed to secure FDA approval.

*Mahendiran undermines the interests of*
*Nexgen Lifesciences and Nexgen Memantine*

21.     As 50% owner of Lifesciences, Mahendiran had intimate knowledge of how lucrative the Agreement between MSN and Lifesciences would be once the two molecules got approved.

22.     Mahendiran also had knowledge of the plan between Lifesciences and Memantine if the FDA did not approve the Proposed Treatment. Namely, that Lifesciences would use the proceeds from its Agreement with MSN to help Memantine repay the principal to the Memantine Investors, if needed.

23. Instead of protecting Memantine, the Memantine Investors, and Lifesciences, Mahendiran chose to use this knowledge of the Agreement between Lifesciences and MSN for his personal gain.

24. Without the knowledge or consent of any other shareholder of Lifesciences, Mahendiran contacted MSN and attempted to undermine the Agreement and convert the profits away from Lifesciences to his own benefit.

25. MSN interpreted Mahendiran's conduct as an anticipatory breach of the Agreement between it and Lifesciences and, as a result, MSN marketed the molecules elsewhere.

26. Following this unauthorized and unjustified action, Mahendiran, as 50% shareholder of Lifesciences, deliberately caused a deadlock among the shareholders of Lifesciences by refusing to allow Lifesciences to pursue a breach of contract claim or any other claim against MSN.

27. Had Mahendiran not interfered with the Agreement between Lifesciences and MSN and had Mahendiran not refused to allow Lifesciences to pursue its claim against MSN, sufficient funds would have been available to repay the Memantine Investors.

*Mahendiran misappropriated and*
*wrongfully withholds Memantine's assets*

28. Furthermore, Mahendiran took certain Memantine corporate monetary assets of approximately $1,185,000.00 through a series of wire transfers from

Memantine's account to his own (the "Mahendiran Wires"). Mahendiran represented that these transfers were a loan and that he would repay Memantine's loan.

29. Since then, Mahendiran, without reason or justification, has flatly refused to return the assets.

<em><u>Mahendiran's actions left Memantine<br>and the Memantine Investors with nothing</u></em>

30. Unfortunately, the Proposed Treatment was not approved by the FDA. Consequently, the anticipated profits never materialized for Memantine.

31. Adding insult to injury, Memantine was not able to return the Memantine Investors' funds as planned because Mahendiran had misappropriated the balance of the principal investments from the Memantine accounts and precluded Memantine from being able to pay back the Memantine Investors.

32. Memantine has made multiple demands upon Mahendiran to return its corporate assets improperly taken and withheld by Mahendiran via the Mahendiran Wires.

33. Mahendiran has refused to comply with Memantine's demands.

34. The Memantine Investors have demanded that Memantine return their investment to them but Memantine is unable to comply with the request due to Mahendiran's actions.

35. Mahendiran's illegal actions created an unjust windfall for himself and caused significant damages to Memantine, the Memantine Investors, Ajjarapu, and Gundlapalli.

36. But for Mahendiran's harmful and improper actions, Memantine would not have suffered the loss of its assets, would have been able to repay the Memantine Investors, and Memantine, Ajjarapu, and Gundlapalli would not have been named as a Defendant in the original action.

37. All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

**COUNT I**
**Breach of Fiduciary Duty**
(*Suren Ajjarapu, Annapurna Gundlapalli, and*
*Nexgen Memantine, Inc. against Mahendiran*)

38. Cross-claim Plaintiffs readopt and reallege paragraphs 1 through 37 of this Crossclaim as if fully set forth herein.

39. As President, Director, and/or Treasurer of Memantine, Mahendiran owed a fiduciary duty of loyalty and care to Memantine, Gundlapalli, and Ajjarapu in conducting the business of Memantine, conserving its assets, and advancing its interests. Additionally, as a fiduciary, Mahendiran was bound to act toward and deal with Memantine, Gundlapalli, and Ajjarapu with the utmost fidelity, loyalty, care, and good faith.

40. Mahendiran was fully aware of the contingency plan between Memantine and Lifesciences to utilize the profits from the Agreement to protect the Memantine Investors' principal investments.

41. By virtue of his conduct described above, Mahendiran willfully breached his fiduciary duty of loyalty and care by knowingly and recklessly causing MSN to breach its agreement with Lifesciences, thereby depriving the Memantine Investors of the possibility of returning the principal amount of their investment.

42. Mahendiran also willfully breached his fiduciary duty of loyalty and care by knowingly and recklessly refusing to allow Lifesciences to assert its rightful claims against MSN, despite knowing such actions would directly damage Memantine, Ajjarapu, and Gundlapalli.

43. Mahendiran breached his fiduciary duty of loyalty and care by taking assets from Memantine for himself under the guise of a loan, with no consideration exchanged, and by refusing to relinquish said assets with no justification despite repeated demand.

44. As a direct and proximate result of his breach of fiduciary duties, Memantine, Gundlapalli, and Ajjarapu have suffered damages and are named defendants in the Memantine Investors' original litigation. But for Mahendiran's abdication of his fiduciary duties, Memantine, Gundlapalli, and Ajjarapu would not have been damaged and would never have been Defendants in the original action.

WHEREFORE, Cross-Claim Plaintiffs Nexgen Memantine, Inc., Annapurna Gundlapalli, and Suren Ajjarapu respectfully demand full and final judgment against Defendant Gajan Mahendiran, awarding damages together with interest on the judgment at the proper legal rate, plus court and litigation costs, expenses, reasonable attorneys' fees, and for such other relief to which Cross-Claim Plaintiffs may show themselves rightly entitled.

## COUNT II
**Indemnification**
(*Annapurna Gundlapalli and Nexgen Memantine, Inc. against Mahendiran*)

45. Cross-Claim Plaintiffs readopt and reallege paragraphs 1 through 37 of this Crossclaim as if fully set forth herein.

46. As set forth above and referenced herein, Cross-Claim Plaintiffs are wholly without fault for the actions and events that form the basis of the Complaint and took no part in the alleged scheme to defraud Plaintiffs.

47. Mahendiran is wholly at fault because, Memantine Investors have alleged that Mahendiran made false representations prior to the Memantine Investors purchasing shares of Memantine, and any such false representations were made without the knowledge or consent of Cross-Claim Plaintiffs during those exchanges.

48. Mahendiran is wholly at fault for Plaintiffs' injuries because Mahendiran held himself out as a principal of Memantine, improperly took Memantine's corporate assets under the guise of a loan, failed to provide anything

of value in exchange, continues to withhold Memantine assets, and refuses to return same without reason or justification despite repeated demand.

49. Mahendiran committed these illegal acts while he was President, Director, and/or Treasurer of Memantine. Consequently, a special relationship exists between Memantine and Mahendiran such that any liability Memantine or Gundlapalli may have to Plaintiffs is only because they are purely vicariously, constructively, derivatively, or technically liable for the acts or omissions of Mahendiran.

WHEREFORE, Cross-claim Plaintiffs Nexgen Memantine, Inc. and Annapurna Gundlapalli respectfully demand full and final judgment against Defendant Gajan Mahendiran, awarding damages together with interest on the judgment at the proper legal rate, plus court and litigation costs, expenses, reasonable attorneys' fees, and for such other relief to which Cross-claim Plaintiffs may show themselves rightly entitled.

## COUNT III
**Contribution Pursuant to Fla. Stat. § 768.31**
*(Suren Ajjarapu, Annapurna Gundlapalli, and*
*Nexgen Memantine, Inc. against Mahendiran)*

50. Cross-Claim Plaintiffs readopt and reallege paragraphs 1 through 37 of this Crossclaim as if fully set forth herein.

51. Mahendiran is liable to Cross-Claim Plaintiffs for all claims asserted by Plaintiffs in this action against Cross-Claim Plaintiffs.

52. Specifically, Mahendiran is wholly at fault for Plaintiffs' injuries because prior to the Memantine Investors purchasing shares of Memantine, various pieces of information were shared between Mahendiran and the Memantine Investors, and the Memantine Investors have alleged that Mahendiran made false representations to them. Any false representations were done without the knowledge or consent of Cross-Claim Plaintiffs during those exchanges. Additionally, Mahendiran improperly took Memantine's corporate assets under the guise of a loan, failed to provide anything of value in exchange, continues to withhold Memantine assets, and refuses to return same without reason or justification despite repeated demand.

53. If Cross-claim Plaintiffs become jointly or severally liable in tort for the same injury, Cross-claim Plaintiffs reserve their right to seek contribution from Mahendiran for his pro rata share of the common liability.

WHEREFORE, Cross-claim Plaintiffs respectfully demand full and final judgment against Defendant Gajan Mahendiran, awarding damages together with interest on the judgment at the proper legal rate, plus court and litigation costs, expenses, reasonable attorneys' fees, and for such other relief to which Cross-claim Plaintiffs may show themselves rightly entitled.

## COUNT IV
**Unjust Enrichment**
*(Nexgen Memantine, Inc. against Mahendiran)*

54. Cross-Claim Plaintiff Nexgen Memantine, Inc., readopts and realleges paragraphs 1 through 37 of this Crossclaim as if fully set forth herein.

55. Memantine conferred a benefit upon Mahendiran by allowing him to access Memantine's corporate assets in the form of a loan, which Mahendiran represented he would pay back within a reasonable time.

56. Mahendiran had knowledge of the benefit conferred because he received the Mahendiran Wires which resulted in a direct benefit to him.

57. Mahendiran voluntarily accepted the benefit conferred upon him by accepting the Mahendiran Wires and retaining the corporate assets despite repeated demand to return said assets.

58. The circumstances are such that it would be inequitable for Mahendiran to retain the benefits conferred upon him without paying the value thereof.

59. Nexgen Memantine is entitled to damages as a result of Mahendiran's unjust enrichment, including the disgorgement of all Memantine's monies unlawfully retained by Mahendiran.

WHEREFORE, Cross-claim Plaintiff Nexgen Memantine, Inc. demands full and final judgment against Defendant Gajan Mahendiran, awarding damages together with interest on the judgment at the proper legal rate, plus court and litigation costs, expenses, reasonable attorneys' fees, and for such other relief to which Cross-claim Plaintiff may show itself rightly entitled.

## COUNT IV
## Constructive Trust
*(Nexgen Memantine, Inc. against Mahendiran)*

60.  Cross-claim Plaintiff Nexgen Memantine readopts and realleges paragraphs 1 through 37 and 45 through 52 of this Crossclaim as if fully set forth herein.

61.  Mahendiran made an express or implied promise to Memantine that the Mahendiran Wires were loans that would be repaid to Memantine.

62.  In reliance on Mahendiran's promise of repayment, Memantine allowed Mahendiran to access its corporate assets and receive transfers in the amount of $1,185,000.00 to Mahendiran.

63.  A confidential relationship exists between Memantine and Mahendiran because Mahendiran was President, Director, and/or Treasurer of Memantine at the time of the transfers.

64.  By virtue of Mahendiran taking approximately $1,185,000.00 of Memantine's corporate assets via the Mahendiran Wires and not providing anything of value in exchange, and by refusing to return said corporate funds, Mahendiran has been unjustly enriched at Memantine's expense.

65.  Through the Mahendiran Wires, Memantine has conferred a benefit upon Mahendiran who has knowledge thereof, because he received the transfers of Nexgen Memantine's corporate assets. Mahendiran voluntarily accepted and

retained the benefit conferred because he has refused to return the corporate assets or offer anything of value to Memantine in exchange for its corporate assets.

66. The circumstances are such that it would be inequitable for Mahendiran to retain the benefit without first paying the value thereof to Memantine.

WHEREFORE, Cross-claim Plaintiff Nexgen Memantine, Inc. respectfully demands full and final judgment against Defendant Gajan Mahendiran, awarding damages together with interest on the judgment at the proper legal rate, plus court and litigation costs, expenses, reasonable attorneys' fees, and for such other relief to which Cross-claim Plaintiff may show itself rightly entitled.

## **DEMAND FOR JURY TRIAL**

Cross-claim Plaintiffs demand a trial by jury of all matters so triable in this cause.

## **DEMAND FOR ATTORNEYS' FEES**

Defendants/Cross-claim Plaintiffs have retained undersigned counsel to defend them in this case and are obligated to pay them their reasonable fee. Defendants/Cross-claim Plaintiffs hereby demand an award of their reasonable attorneys' fees as allowed by law.

Respectfully submitted this 23rd day of February 2021.

>*/s/ Paul Thanasides*
>Paul B. Thanasides
>Florida Bar No.: 103039
>paul@mcintyrefirm.com

CLService@mcintyrefirm.com
Christa Queen-Sutherland
Florida Bar No. 0091204
christa@mcintyrefirm.com
Garrett S. Severson
Florida Bar No.: 108259
garrett@mcintyrefirm.com
McIntyre Thanasides Bringgold Elliott
   Grimaldi Guito & Matthews, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602
Telephone: 813.223.0000
Facsimile: 813.225.1221
***Attorneys for Suren Ajjarapu, Annapurna Gundlapalli, Trxade Group, Inc., and Nexgen Memantine, Inc.***

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 23, 2021, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF system, which will provide electronic notice to the following:

Joseph F. Southron
Florida Bar No. 122109
joe@fourriverslaw.com
eservice@fourriverslaw.com
Four Rivers Law Firm
400 N. Ashley Drive, Suite 1900
Tampa, Florida 33602
Telephone (813) 773-5105
Facsimile (813) 773-5103
***Attorney for Plaintiffs***

Kenneth G.M. Mather, Esq.
Florida Bar No. 619647

kmather@gunster.com
tkennedy@gunter.com
eservice@gunster.com
Gunster, Yoakley & Stewart, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
Telephone (813) 222-6630;
Facsimile (813) 228-6739
***Attorneys for Defendants Gajan Mahendiran***

                                        */s/ Paul Thanasides*
                                        Attorney