VIRGINIA:

IN THE CIRCUIT COURT FOR FAUQUIER COUNTY

| | |
|---|---|
| METCURE, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>GAJAN MAHENDIRAN,<br>4427 Corral Road<br>Warrenton, VA 20187,<br><br>AMUDHA MAHENDIRAN,<br>4427 Corral Road<br>Warrenton, VA 20187,<br><br>    and<br><br>WESTMINSTER PHARMACEUTICALS, LLC,<br>    Registered Agent:<br>    Corporation Service Company<br>    100 Shockoe Slip, 2nd Floor<br>    Richmond, VA 23219,<br><br>    Defendants. | Civil Action No. **CL20-9** |

## COMPLAINT

COMES NOW Plaintiff MetCure, Inc. ("MetCure"), by and through counsel, and files this Complaint against Defendants, Dr. Gajan Mahendiran ("Dr. Mahendiran"), Amudha Mahendiran ("Mrs. Mahendiran"), and Westminster Pharmaceuticals, LLC ("Westminster"), collectively "Defendants". In support of its Complaint, MetCure states as follows:



FILED AT 9:56 M
JAN -9 2020
GAIL H. BARB, CLERK
BY: _____ D.C.

Exhibit "B"

*Introduction*

1. This is a civil action brought by MetCure against three defendants for breach of contract-specific performance, unjust enrichment-constructive trust, unjust enrichment-restitution, and assumpsit/quasi-contract. During 2017, at the express request of Dr. Mahendiran, MetCure provided a series of urgent distributions of funds totaling nearly $800,000 for the purpose of keeping Westminster afloat at a time when Westminster was in dire financial straits. MetCure acted through Suren Ajjarapu ("Ajjarapu"), its President and sole Director and a long-time business associate of Dr. Mahendiran.

2. The funds were transferred, in accordance with Dr. Mahendiran's explicit instructions, to one or more financial accounts belonging to Dr. and Mrs. Mahendiran, and then distributed to Westminster's own accounts by the Mahendirans. In return for this critical financial assistance, MetCure was given the option to acquire a fifty percent (50%) share of ownership in Westminster or to have these transactions treated as loans and repaid with interest.

3. Because of MetCure's investments, Westminster was able to stave off financial ruin and, upon information and belief, has now grown to be a highly successful, multi-million-dollar pharmaceutical company. However, when MetCure requested the distribution of the fifty percent (50%) share of ownership in Westminster, it was rebuffed. And when MetCure requested repayment of the funds invested, it was rebuffed again. Defendants have failed and refused to honor their obligations with respect to MetCure's investment and have instead improperly converted MetCure's invested funds to their own use and benefit.

4. In this action, MetCure seeks appropriate judicial relief—including alternative remedies for specific performance, imposition of a constructive trust, restitution, and quasi-contract—to rectify this injustice.

2

## *Parties*

5.  Plaintiff MetCure, Inc. is a Wyoming corporation with its principal place of business in Tampa, Hillsborough County, Florida.

6.  On information and belief, Defendant Gajan Mahendiran resides in Warrenton, Fauquier County, Virginia, and his principal place of employment also is within Fauquier County.

7.  On information and belief, Defendant Amudha Mahendiran resides in Warrenton, Fauquier County, Virginia.

8.  According to the information available through the Virginia State Corporation Commission, Defendant Westminster Pharmaceuticals, LLC is registered to do business in Virginia as a limited liability company organized under the laws of Delaware, having its principal place of business in Olive Branch, Mississippi.

9.  According to the information available through the Virginia State Corporation Commission, Westminster's registered agent in Virginia is Corporation Service Company, located at 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

10. On Westminster's website, Defendant Gajan Mahendiran is listed as Westminster's "Owner".

## *Jurisdiction and Venue*

11. This Court has jurisdiction over the claims alleged in this Complaint and Defendants.

12. Pursuant to the provisions of Va. Code § 8.01-262, permissible venue exists in this Court because Defendants Dr. and Mrs. Mahendiran reside in this circuit, Dr. Mahendiran's

principal place of business is in this circuit, and/or a substantial part of the transactions involved in this action took place in this circuit.

### *Factual Allegations*

13. On or about December 31, 2016, Dr. Mahendiran and Mrs. Mahendiran purchased Westminster.

14. Upon information and belief, Dr. Mahendiran and Mrs. Mahendiran are and have been at all relevant times thereafter the owners of a controlling membership/ownership interest in Westminster. Upon information and belief, Dr. Mahendiran is and has been at all relevant times the managing member of Westminster.

15. In early 2017, Westminster was facing insolvency and financial failure.

16. Ajjarapu is the sole officer and director of MetCure. He has significant experience, contacts, and acumen in the pharmaceutical industry.

17. Ajjarapu also is a long-time business associate of Dr. Mahendiran, and in the first half of 2017 he provided management consulting advice at the executive level to Westminster.

18. On behalf of Defendants, Dr. Mahendiran approached Ajjarapu and requested that MetCure promptly facilitate an investment of money in Westminster in order to keep it afloat (the "Westminster Investment").

19. Ajjarapu, acting on behalf of MetCure, and Dr. Mahendiran, acting on behalf of Defendants, orally agreed that MetCure would transfer funds to Defendants for the purpose of helping Westminster avoid financial failure. The parties agreed that upon MetCure's payment of these funds, MetCure would be entitled to receive, at its option, either a fifty percent (50%) ownership interest in Westminster or repayment of the funds advanced, with interest.

4

20. In reliance on that understanding, starting in January 2017 and continuing through July 2017, MetCure made a series of payments by wire transfer to an account identified by Dr. Mahendiran and believed to be owned by Dr. and Mrs. Mahendiran, for purposes of the Westminster Investment.

21. Specifically, MetCure made the following transfers from its bank account:

   a. $100,000.00 on January 12, 2017;

   b. $150,000.00 on February 14, 2017;

   c. $250,000.00 on February 22, 2017;

   d. $135,000.00 on May 16, 2017;

   e. $105,000.00 on May 26, 2017; and

   f. $50,000.00 on July 18, 2017.

22. In addition to the above payments, MetCure made another payment of $7,498.00 on March 10, 2017, to a third party, for what MetCure understood to be legal fees related to the Westminster Investment.

23. Upon information and belief, most or all the $790,000.00 in payments comprising the Westminster Investment were subsequently transferred from the joint account of Dr. and Mrs. Mahendiran to one or more accounts owned and controlled by Westminster.

24. The Westminster Investment enabled Defendants to stave off the financial failure and collapse of Westminster in 2017.

25. Westminster has now grown to be a highly successful, multi-million-dollar pharmaceutical company.

26. Despite MetCure's wire transfers of $790,000.00 pursuant to the Westminster Investment and its further payment of $7,489.00 in legal fees to and for the benefit of Defendants,

MetCure never received, despite demand, the ownership interest it was promised, any substitute return on its investment, or a repayment of said investment with interest.

27. The payments made by MetCure, totaling $797,498.00, conferred a benefit on Defendants and were made with their knowledge and approval.

28. Defendants have refused and failed to compensate MetCure for the benefit it conferred upon them.

29. Defendants have knowingly retained the benefit of the Westminster Investment and converted it to their own use and advantage.

30. MetCure has been damaged by Defendants' failure and refusal to abide by the conditions placed by MetCure on its Westminster Investment.

31. Defendants have, in turn, been unjustly enriched by the value of the fifty percent (50%) ownership interest that they failed and refused to deliver to MetCure in return for MetCure's payments.

32. Defendants' conduct was accompanied by such fraud, ill will, recklessness, wantonness, oppressiveness, and/or willful and conscious disregard of MetCure's rights that an award of exemplary and punitive damages in the amount of $350,000 is justified and proper.

33. All conditions precedent to the maintenance of this action have occurred, have been satisfied, or have been waived.

## COUNT I
### *Breach of Oral Agreement – Specific Performance*

34. MetCure readopts and incorporates the allegations set forth in the preceding paragraphs as if fully set forth here.

35. This is a claim for breach of contract predicated on the terms of MetCure's Westminster Investment for which the equitable remedy of specific enforcement is demanded.

36. MetCure was promised the option to acquire a fifty percent (50%) ownership share in Westminster or repayment of the funds advanced with interest in return for making the Westminster Investment.

37. MetCure performed all its obligations with respect to the Westminster Investment.

38. Defendants have failed and refused to convey to MetCure, despite demand, the promised fifty percent (50%) ownership interest in Westminster in return for the payments made by MetCure to and for the benefit of Defendants. This was a material breach of the terms and conditions of the Westminster Investment.

39. MetCure is without an adequate remedy at law, will lose the benefit of its bargain, and will suffer irreparable harm unless specific performance of the Westminster Investment is enforced.

40. In connection with the equitable remedy of specific performance for breach of oral contract, it also is just and proper for the Court to require Defendants to pay the reasonable attorneys' fees and expenses incurred by MetCure as a result of Defendants' inequitable conduct.

WHEREFORE Plaintiff MetCure, Inc. demands specific performance of Defendants' promise to convey a fifty percent (50%) ownership interest in Westminster to MetCure in consideration for the investments made by MetCure, along with MetCure's reasonable costs and

expenses of this lawsuit, its reasonable attorneys' fees, and such other relief as this Court may deem just and proper.

## COUNT II
### *Unjust Enrichment – Constructive Trust*

41. MetCure readopts and incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

42. This count is pled in the alternative to Count I as a claim for imposition of a constructive trust to prevent and remedy unjust enrichment on the part of Defendants.

43. If the Court should determine there was no enforceable contract with respect to the Westminster Investment sufficient to support specific performance of Defendants' obligation to convey to MetCure a fifty percent (50%) ownership interest in Westminster as alleged in Count I, MetCure proffers this claim for imposition of a constructive trust upon a fifty percent (50%) ownership interest in Westminster to prevent and remedy unjust enrichment on the part of Defendants.

44. When MetCure paid Defendants the funds described above, it conferred a benefit upon Defendants and enabled them to avoid financial failure.

45. In addition, when MetCure paid $7,498.00 on March 10, 2017, for legal fees relating to Westminster, it conferred an additional benefit upon Defendants.

46. Defendants knowingly and voluntarily accepted and retained those benefits.

47. Defendants have not compensated MetCure commensurate with the benefits conferred upon them.

48. Under the circumstances, it would be inequitable for Defendants to retain the benefits without adequately compensating MetCure.

8

49. The measure of the unjust enrichment to the Defendants is equal to the current value of the fifty percent (50%) share of ownership in Westminster that was a condition of MetCure's Westminster Investment. The most appropriate remedy for that unjust enrichment is the imposition of a constructive trust on that fifty percent (50%) interest in Westminster for the benefit of MetCure.

50. In connection with the equitable remedy of imposing a constructive trust over the fruits and proceeds of the Westminster Investment, it also is just and proper for the Court to require Defendants to pay the reasonable attorneys' fees and expenses incurred by MetCure as a result of Defendants' inequitable conduct.

WHEREFORE Plaintiff MetCure, Inc. demands judgment against Defendants by the imposition of a constructive trust, for the benefit of MetCure, on fifty percent (50%) of the ownership of Westminster, along with MetCure's reasonable attorneys' fees and costs, pre- and post-judgment interest as allowed by law, MetCure's reasonable costs for the maintenance of this lawsuit, and such other relief as this Court may deem just and proper.

### COUNT III
*Unjust Enrichment – Restitution*

51. MetCure readopts and incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

52. This is a claim for restitution, which is pled in the alternative to Counts I and II.

53. Over the course of 2017, MetCure transferred a total of $790,000.00 to Defendants in the series of transfers described above.

54. MetCure also paid $7,498.00 on March 10, 2017, for legal fees relating to the Westminster Investment.

9

55. Defendants knowingly and voluntarily accepted and retained those benefits.

56. Defendants have not compensated MetCure commensurate with the benefits conferred upon them.

57. Under the circumstances, it would be inequitable for Defendants to retain those funds and not make restitution to MetCure.

58. By retaining the benefits of and refusing to repay the funds transferred by MetCure to Defendants and for their benefit, Defendants have been unjustly enriched in the amount of at least $797,498.00.

59. In connection with the equitable remedy of restitution for unjust enrichment, it also is just and proper for the Court to require Defendants to pay the reasonable attorneys' fees and expenses incurred by MetCure as a result of Defendants' inequitable conduct.

WHEREFORE Plaintiff MetCure, Inc. demands judgment against Defendants, jointly and severally, in the form of restitution for unjust enrichment in the amount of at least $797,498.00, plus pre- and post-judgment interest as allowed by law, punitive damages in the amount of $350,000.00, the reasonable attorneys' fees and expenses incurred by MetCure in this action, and such other relief as this Court deems just and proper.

### COUNT IV
#### *Assumpsit/Quasi-Contract*

60. MetCure readopts and incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

61. This is a claim for assumpsit/quasi-contract at common law, in the alternative to Counts I, II, and III.

62. Over the course of 2017, at Defendants' request, MetCure transferred $790,000.00 to Defendants in the series of transfers described above.

63. MetCure also paid $7,498.00 on March 10, 2017, for legal fees relating to the Westminster Investment.

64. Defendants knowingly and voluntarily accepted and retained the benefit of these transfers.

65. Defendants' acts and omissions have caused MetCure damage and prejudice.

66. When a party receives money belonging to another without any reason, authority, or consideration, an action lies in assumpsit or quasi-contract against the receiver for the money received. A quasi-contract may be imposed by the court on the receiver to prevent the unjust enrichment of another; it is an equitable remedy available when the facts establish unjust enrichment but fail to establish that the parties had an enforceable contract.

67. Defendants have not compensated MetCure commensurate with the benefits conferred upon them.

68. Under the circumstances, it would be inequitable for Defendants to retain the funds provided by MetCure, and equity imposes a promise upon them to return the unjust benefit and relieve the unjust injury caused to MetCure.

69. MetCure has been damaged by Defendants' acts and omissions in an amount not less than $797,498.00.

70. By retaining the benefits of and refusing to repay the funds transferred by MetCure to Defendants and for their benefit, Defendants are liable to MetCure in assumpsit for not less than $797,498.00.

71. In connection with the equitable remedy of quasi-contract based on assumpsit, it also is just and proper for the Court to require Defendants to pay the reasonable attorneys' fees and expenses incurred by MetCure as a result of Defendants' inequitable conduct.

WHEREFORE Plaintiff MetCure, Inc. demands judgment against Defendants for assumpsit/quasi-contract in the amount of at least $797,498.00, plus pre- and post-judgment interest as allowed by law, the reasonable attorneys' fees and expenses incurred by MetCure in this action, and such other relief as this Court deems just and proper.

Respectfully submitted,

METCURE, INC.
By Counsel

## JURY DEMAND

Plaintiff, by counsel, hereby demands trial by jury on all issues triable by jury.

## ATTORNEYS' FEES CERTIFICATE IN ACCORDANCE WITH RULE 3:25 OF THE RULES OF THE SUPREME COURT OF VIRGINIA

MetCure invokes the equitable jurisdiction of the Court in support of an extension of Virginia's "American Rule" to allow the award of reasonable attorneys' fees and expenses if and to the extent MetCure receives judgment for the equitable remedy of specific performance, as sought in Count I; the equitable remedy of the imposition of a constructive trust, as sought in Count II; the equitable remedy of restitution, as sought in Count III; and/or the equitable remedy of quasi-contract based on assumpsit, as sought in Count IV. The "American Rule" is not a blanket prohibition against the award of attorneys' fees absent a contractual or statutory provision, it is rather a general rule or guide which must be construed consistently with the court's equitable powers and the rule of complete relief – *i.e.*, that a plaintiff is entitled to be restored to the position

he enjoyed but for defendant's fraud. That is why the "American Rule" is not violated by the recovery of attorneys' fees in a fraud case. *Prospect Dev. v. Bershader*, 258 Va. 75 (1999); *see also Millboro Lumber Co. v. Augusta Corp.*, 140 Va. 409 (1924); *Anderson v. Sharma*, 38 Va. Cir. 22 (1995). "Equitable remedies ... are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." *Turner v. Citizens Bank*, 111 Va. 184, 192 (1910).

RICH ROSENTHAL BRINCEFIELD MANITTA DZUBIN & KROEGER, PLLC

By: /s/ David C. Rohrbach
Edward S. Rosenthal, VSB #15780
Lana M. Manitta, VSB #42994
David C. Rohrbach, VSB #90396
500 Montgomery St., Suite 600
Alexandria, VA 22314
703.299.3440 (p)
703.299.3441 (f)
ESRosenthal@RRBMDK.com
LMManitta@RRBMDK.com
DCRohrbach@RRBMDK.com
*Counsel for Plaintiff*