**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JITENDRA JAIN,
MANISH ARORA,
SCARIYA KUMARAMANGALAM,
HARSH DATTA, and
BALVANT ARORA, as individuals
And derivatively on behalf of
NEXGEN MEMANTINE INC.

Case No.: 8:20-cv-2263-T-33JSS

Plaintiffs,

v.

NEXGEN MEMANTINE, INC.,
SUREN AJJARAPU,
ANNAPURNA GUNDLAPALLI,
GAJAN MAHENDIRAN,
NEXGEN LIFE SCIENCES LLC,
TRXADE GROUP, INC.,
G&S COAL TRADERS, LLC,

Defendants.
_________________________________________/

**DEFENDANTS SUREN AJJARAPU AND NEXGEN MEMANTINE, INC.'S MOTION FOR PROTECTIVE ORDER DIRECTED TO PLAINTIFFS' SUBPOENA FOR DEPOSITION DUCES TECUM TO DEAN KENT**

Defendants Suren Ajjarapu ("Ajjarapu") and Nexgen Memantine, Inc. ("Memantine") pursuant to Federal Rules of Civil Procedure Rule 26(c), file this Motion for Protective Order as to Plaintiffs' Subpoena Duces Tecum for Deposition directed to Dean Kent (the "Subpoena"), stating as follows:

**STATEMENT OF RELEVANT FACTS**

1. On May 14, 2021, Plaintiffs filed their Second Amended Verified Complaint (the "Complaint" or "Compl.") against Defendants Suren Ajjarapu ("Ajjarapu"), Nexgen Memantine, Inc. ("Memantine"), Annapurna Gundlapalli ("Gundlapalli"), Gajan Mahendiran ("Mahendiran"), Nexgen LifeSciences, LLC ("LifeSciences"), Trxade Group, Inc., ("Trxade"), and G&S Coal Traders, LLC ("G&S Coal Traders"). (Doc. 165).

2. Plaintiffs' Complaint boils down to two alleged events of import: (1) Plaintiffs invested a total of $425,000.00 of capital in Memantine in hopes of making a profit if the company was successful, Compl. at ¶ 70, and (2) five transfers of funds were made from Memantine's account that Plaintiffs allege caused them damage (the "Transfers"), Compl. at ¶ 82.

3. Prior to Plaintiffs filing this litigation, Memantine hired attorney Dean Kent ("Kent") to investigate the Transfers.

4. Kent appeared during a shareholders' meeting on or around November 27, 2018, to discuss the investigation, and appeared during a shareholders' meeting on or around August 13, 2019, to report the findings of the investigation.

5. In furtherance of good faith discovery, Memantine has agreed to produce all non-privileged documents on which attorney Kent relied in conducting his investigation of the Transfers.

6. Yet, on October 27, 2021, Plaintiffs served a Subpoena Duces Tecum for Deposition directed to attorney Kent that seeks a plethora of documents, communications, and information that have no bearing on the claims and defenses in this matter and are protected by the attorney-client privilege.

7. Plaintiffs' Subpoena includes two requests, both of which are overbroad and seek documents protected by attorney-client privilege:

> **REQUEST NO. 1:** All communications and documents relevant to the subject matter of this action, exchanged between you and interested parties in the case, including but not limited to all individual defendants, Nexgen Memantine, Inc.; Nexgen Lifesciences, LLC; G&S Coal Traders, LLC; Sansur Associates, LLC; Shriji Medicine, LLC; Trxade Group, Inc.; Westminster Pharmaceuticals, LLC; Metcure, Inc.; including their owners, shareholders, members, partners, directors, managers, officers, employees, agents, contractors, or affiliates.
>
> **REQUEST NO. 2:** All communications and documents regarding the investigation you conducted on behalf of Nexgen Memantine, LLC, as approved by the shareholders at the special meeting noticed and held on November 27, 2018.

A copy of the Subpoena is attached as **Exhibit A**.

8. As provided above, Request No. 1 seeks every document and communication ever shared between Ajjarapu, Memantine, Kent, and their agents, regarding a variety of entities, without any time limitation and without any concern for whether the documents or communications have any bearing on the claims or defenses in this case. Request No. 1 is not good faith discovery. It is a fishing

expedition meant to annoy, embarrass, and harass Defendants and impede on the attorney-client privilege.

9. Request No. 2, although more appropriately limited in scope, seeks communications between Memantine and Kent that are clearly protected by the attorney-client privilege.

10. Because the Subpoena requests documents and information that are protected by the attorney-client privilege and are well outside the scope of good faith discovery as set forth in Rule 26, good cause exists for this Court to issue a protective order prohibiting Plaintiffs from requesting nonrelevant documents and communications, prohibiting Plaintiffs from requesting communications protected by the attorney-client privilege, and prohibiting Plaintiffs from inquiring about same during the deposition of attorney Kent scheduled for November 10, 2021.

## MEMORANDUM OF LAW

### I. Legal Standard

Federal Rule of Civil Procedure 26(b) provides the scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

> benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

F. R. Civ. P. 26(b). Federal Rule of Civil Procedure 26(c) provides that for good cause a court may issue a protective order to limit discovery sought:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending… The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
> …
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters

F. R. Civ. P. 26(c). The party seeking a protective order has the burden to demonstrate good cause and must state with particularity the reasons for the request. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005) (citation omitted). "The court has broad discretion to compel or deny discovery." *Walker v. Credit Protection Ass'n, LP*, 309 F.R.D. 668, 670 (M.D. Fla. 2015) (citation omitted).

**A. Good cause exists for the Court to issue a protective order forbidding Plaintiffs from seeking documents in Subpoena Request No. 1 because the information sought is not relevant or proportional to the needs of the case.**

"As parties, Defendants clearly have standing to move for a protective order if the subpoena[] seek[s] irrelevant information." *Auto-Owners Ins. Co.*, 231 F.R.D.

at 429 (citation omitted). "The scope of permissible, relevant discovery is determined by the parties' claims and defenses." *Gulfside, Inc. v. Lexington Insur. Co.*, 2021 WL 1817096, *1 (M.D. Fla. Mar. 16, 2021) (citation omitted). "Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *Gulfside*, 2021 WL 1817096 at *1 (citation omitted). "The term 'relevant' in Rule 26 should encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " *Walker*, 309 F.R.D. at 671 (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351–52 (1978)). "Nonetheless, the court must limit the extent of discovery otherwise allowed if it determines that the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id.* (citing Fed. R. Civ. P. 26(b)(2)(C)).

Here, despite the limited scope of the facts and issues in the case, the relatively limited amount of alleged damages, and the fact that Memantine has already produced thousands of documents to Plaintiffs in furtherance of good faith discovery, Plaintiffs are on an improper fishing expedition. Plaintiffs know that

attorney Kent was hired by Memantine for the limited purpose of investigating the Transfers of funds from Memantine's accounts. Yet, Request No. 1 seeks documents and communications that have no relation to Memantine's investigation for which Kent was hired. Specifically, Request No. 1 seeks:

> All communications and documents relevant to the subject matter of this action, exchanged between you and interested parties in the case, including but not limited to all individual defendants, Nexgen Memantine, Inc.; Nexgen Lifesciences, LLC; G&S Coal Traders, LLC; Sansur Associates, LLC; Shriji Medicine, LLC; Trxade Group, Inc.; Westminster Pharmaceuticals, LLC; Metcure, Inc.; including their owners, shareholders, members, partners, directors, managers, officers, employees, agents, contractors, or affiliates.

In fact, Request No. 1 is so overbroad that it seeks all documents and communications between attorney Kent and eight different entities, five of which are not parties to the case, including all of their owners, shareholders, members, partners, directors, managers, officers, employees, agents, contractors, or affiliates, with no time limitation or limitation regarding the content of those communications. Plaintiffs are conducting an outrageously broad fishing expedition into all communications and documents between attorney Kent, and anyone affiliated with Defendants in this case without any concern for the relevancy or disproportionality of the request when compared to the needs of this case. Plaintiffs have plead no allegation that could possibly support this fishing expedition into all communications with attorney Kent related to these nonparty entities or persons

associated with these nonparty entities when Plaintiffs are fully aware that Memantine hired Kent for the limited purpose of investigating the Transfers and the documents showing the details of the Transfers have already been produced. Accordingly, good cause exists for this Court to issue an order forbidding the disclosure or inquiry regarding the documents or information requested in Request No. 1.

**B. Good cause exists for the Court to issue a protective order limiting Subpoena Requests No. 1 and No. 2 to non-privileged documents and information.**

Plaintiffs' Complaint contains a mix of claims based in federal and Florida state law. *See* Doc. 165. Under both Florida state law and federal law, Memantine's communications with its attorney Kent are protected by the attorney-client privilege.

**i. Memantine's communications with attorney Kent are protected under Florida state law.**

For the claims based in Florida law, Florida law governs application of the attorney-client privilege. *See Tyne v. Time Warner Entertainment, Co., L.P.*, 212 F.R.D. 596, n.2 (M.D. Fla. 2002) ("Federal Rule of Evidence 501 states that 'in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege…shall be determined in accordance with State law.'"). "[T]he attorney-client privilege is the oldest confidential communication privilege known in the common law and is now codified by statute and contained in the Evidence Code, section 90.502, Florida Statutes

(2007)." *West Bend Mut. Ins Co. v. Higgins*, 9 So. 3d 655, 657 (Fla. 5th DCA 2009). Section 90.502, Florida Statutes, codifies the attorney-client privilege and provides:

> A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
>
> 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
>
> 2. Those reasonably necessary for the transmission of the communication.

Fla. Stat. § 90.502(1)(c).

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

Fla. Stat. § 90.502(2). The purpose of such privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Am. Tobacco Co. v. State*, 697 So. 2d 1249, 1252 (Fla. 4th DCA 1997). Such public interest is "traditionally deemed worthy of maximum legal protection." *Id*. In addition, attorney-client privilege is protected without concern for the litigation needs of the opposing party. *See Quarles & Brady, LLP v. Birdsall*, 802 So. 2d 1205, 1206 (Fla. 2d DCA 2002) (finding that only five exceptions to the attorney-client privilege exist under section 90.501, Florida Statute, and undue hardship and the opposing party's

claim that the privileged information is necessary to prove their case are not included in those statutory exceptions).

Subpoena Request No. 2 seeks:

> All communications and documents regarding the investigation you conducted on behalf of Nexgen Memantine, LLC, as approved by the shareholders at the special meeting noticed and held on November 27, 2018.

*See* **Exhibit A**. Plaintiffs seem to believe that a corporation's communications with its attorney are not privileged from its shareholders, but that is not the law in Florida. In *Tail of the Pup, Inc. v. Webb*, a stockholder who owned 25% of the corporation's stock subpoenaed correspondence and memoranda between the corporation and its corporate counsel, and the corporation asserted the attorney-client privilege as the basis for a protective order. *Tail of the Pup, Inc. v. Webb*, 528 So. 2d 506, 506 (Fla. 2d DCA 1988). The circuit court found that the attorney-client privilege did not apply because respondent owned 25% of the corporation's stock and was a director of the corporation during the time period of the requested documents. *Id.* The Second District Court of Appeal vacated the circuit court's order.

> The circuit court departed from the essential requirements of law when it determined that the lawyer-client privilege did not apply due to the respondent's status with the corporate petitioner. It is well established that the lawyer client privilege applies when the client is a corporation.
> …
> Respondent, in his position as an individual stockholder, officer and director, has no authority to waive or assert the

> privilege against the wishes of the corporation's board of directors.

*Tail of the Pup, Inc. v. Webb*, 528 So. 2d 506, 506-07 (Fla. 2d DCA 1988) (citations omitted).

Likewise, here, Memantine's communications with its counsel are protected by the attorney-client privilege, and Plaintiffs, who own 8% of Memantine's stock, do not have the right to seek to forgo that privilege. Accordingly, under Florida law, Plaintiffs' requests in the Subpoena directed to attorney Kent should be limited to nonprivileged documents only and the information sought during his deposition should be limited to the same.

**ii. Memantine's communications with attorney Kent are protected under federal law.**

The Eleventh Circuit has articulated that in order to invoke the attorney-client privilege, the claimant must establish the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
>
> …

> A communication between an attorney and his client will be protected if it is: "(1) intended to remain confidential and (2) under the circumstances was reasonable expected and understood to be confidential."

*United States v. Noriega*, 917 F.2d 1543, 1550-51 (11th Cir. 1990). A party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative, including the other party's insurer, unless "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Freytes-Torres v. City of Sanford, Florida*, 2008 WL 1133665, *2 (M.D. Fla. April 30, 2008) (citing Fed. R. Civ. P. 26(b)(3)).

Memantine has already agreed to produce all nonprivileged documents on which attorney Kent relied during his investigation of the Transfers. Yet, Plaintiffs' Subpoena Request seeks communications and information protected by Memantine's attorney-client privilege. Federal courts have long acknowledged the right of a corporation to assert attorney-client privilege unless the stockholders show good cause why it should not be invoked in a particular instance.

> The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be

> subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970). In order to show good cause to forgo the corporation's privilege, the court looks to the following factors:

> There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. The court can freely use in camera inspection or oral examination and freely avail itself of protective orders, a familiar device to preserve confidentiality in trade secret and other cases where the impact of revelation may be as great as in revealing a communication with counsel.

*Id. See also Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1415 (11th Cir. 1994) ("Although many of the factors listed in *Garner* appear to support the plaintiffs' argument that there is good cause for discovery, two factors foreclose it: the fact that only a tiny percentage of the defendant Union's members are members

of the plaintiff class; and the fact that the interest of the plaintiff class is adverse to those who are not in the class.") (citing *Garner*, *supra.*).

Here, Plaintiffs do not have good cause to forgo Memantine's attorney-client privilege regarding its communications with its attorney Kent. Only five shareholders, making up only 8% of Memantine's ownership, seek to forgo Memantine's attorney-client privilege. *See Cox v. Administrator U.S. Steel & Carnegie*, *supra.* There is no necessity for the shareholders to obtain the privileged communications between Memantine and its attorney because Memantine has already agreed to produce all non-privileged documents on which Kent relied during his investigation of the Transfers. Plaintiffs' request for communications and information beyond the nonprivileged documents relied on by Kent during the investigation of the Transfers is clearly a fishing expedition and not based on any necessity to substantiate any of Plaintiffs' claims that they were allegedly harmed by the Transfers. Accordingly, Defendants request this Court limit Request No. 2 to nonprivileged documents and limit information sought during the deposition of Kent to non-privileged information.

Likewise, should the Court determine that some portion of Request No. 1 is relevant and proportional to the needs of the case, any responsive communications between attorney Kent and the entities in Request No. 1 were shared under the scope of an attorney-client relationship during which the client sought legal services from

attorney Kent and the privilege has not been waived. Accordingly, for the same reasons stated above regarding privileged communications sought in Request No. 2, any portion of Request No. 1 determined to be within the scope of Rule 26(b) should likewise be limited to nonprivileged documents.

Based on the foregoing, Defendants Suren Ajjarapu and Nexgen Memantine, Inc. respectfully request this Court enter an Order forbidding Plaintiffs from seeking documents and communications in Subpoena Request No. 1 or seeking such information during the deposition of attorney Dean Kent, or in the alternative limit Request No. 1 to only nonprivileged documents and information, and limiting Subpoena Request No. 2 to nonprivileged documents and limiting the information sought during the deposition of Dean Kent to the same.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g) and Federal Rule of Civil Procedure 26(c), counsel for Nexgen Memantine, Inc. conferred with counsel for plaintiffs via telephone and email on November 3, 2021, in a good faith effort to resolve the dispute without court intervention but the parties are unable to resolve the dispute.

Respectfully submitted this 5th day of November 2021.

*/s/ Christa Queen-Sutherland*
Paul Thanasides
Florida Bar No. 103039
paul@mcintyrefirm.com
clservice@mcintyrefirm.com
Christa Queen-Sutherland

Florida Bar No.: 0091204
christa@mcintyrefirm.com
complexlit@mcintyrefirm.com
Garrett Severson
Florida Bar No.: 108259
garrett@mcintyrefirm.com
McIntyre Thanasides Bringgold Elliott
Grimaldi Guito & Matthews, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602
Telephone: 813.223.0000
Facsimile: 813.225.1221
***Attorneys for Defendants Suren Ajjarapu, Annapurna Gundlapalli, Nexgen Memantine, Inc., and Trxade Group, Inc.***

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 5, 2021, a true and correct copy of the foregoing document was electronically filed using the Court's CM/ECF system, which will provide electronic notice to the following:

Joseph F. Southron
Florida Bar No. 122109
joe@fourriverslaw.com
eservice@fourriverslaw.com
Four Rivers Law Firm
400 N. Ashley Drive, Suite 1900
Tampa, Florida 33602
Telephone (813) 773-5105
Facsimile (813) 773-5103
***Attorney for Plaintiffs***

Kenneth G.M. Mather
Florida Bar No. 619647
kmather@gunster.com
tkennedy@gunster.com
eservice@gunster.com

Gunster, Yoakley & Stewart, P.A.
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
Telephone (813) 222-6630
Facsimile (813) 228-6739
***Attorneys for Gajan Mahendiran***

Jason H. Baruch
Jason.baruch@hkLaw.com
Wendysue.henry@hklaw.com
Holland & Knight LLP
100 N. Tampa Street, Suite 4100
Tampa, Florida 33602
Telephone: 813.227.8000
Facsimile: 813.227.0134
***Attorneys for G&S Coal Traders, LLC***

*/s/ Christa Queen-Sutherland*
Attorney