**Page 1**

                    NOTICE OF SPECIAL MEETING OF SHAREHOLDERS OF
                                NEXGEN MEMANTINE, INC.

    TELEPHONIC
    PROCEEDINGS:      1. APPROVAL FOR INVESTIGATING THE
                      WESTMINSTER TRANSACTION.  To
                      consider and vote upon a proposal to
                      engage litigation counsel to pursue
                      potential claims against Gajan
                      Mahendiran arising from his
                      transactions with the company
                      relating to Westminster
                      Pharmaceuticals.

                      2. OTHER BUSINESS.  To transact such
                      business as may properly come before
                      the special meeting or any
                      adjournments of postponements
                      thereof.

    TAKEN:            Pursuant to notice of the board of
                      directors of Nexgen Memantine, Inc.
                      in accordance with Section 17-16-702
                      of the Wyoming Business Corporation
                      Act

    DATE:             November 27, 2018

    TIME:             11:11 a.m. to 11:56 a.m.

    REPORTED BY:      Melanie Keefe
                      Notary Public
                      State of Florida at Large

    PLACE:            8913 Regents Park Drive
                      Suite 550
                      Tampa, Florida  33647

                REGENCY REPORTING SERVICE, INC. (813)224-0224

**Page 2**

    APPEARANCES:    RICHARD J. McINTYRE, ESQUIRE
                    DAVID M. SASLOW, ESQUIRE
                    McIntyre, Thanasides, Bringgold, Elliott,
                    Grimaldi, Guito & Matthews, P.A.
                    500 East Kennedy Boulevard
                    Suite 200
                    Tampa, Florida  33602

                        Attorneys for Suren Ajjarapu

                    H. KEETO SABHARWAL, ESQUIRE (Via Telephone)
                    Pillsbury, Winthrop, Shaw, Pittman, LLP
                    1200 Seventeenth Street Northwest
                    Washington, DC  20036

                        Attorney for Westminster
                        Pharmaceuticals

                    DEAN A. KENT, ESQUIRE
                    Trenam Law
                    101 East Kennedy Boulevard
                    Suite 2700
                    Tampa, Florida  33602

    ALSO PRESENT:   Suren Ajjarapu
                    Gajan Mahendiran (Via Telephone)
                    Balvant Arora (Via Telephone)
                    Harsh Datta (Via Telephone)
                    Jitendra Jain (Via Telephone)

                REGENCY REPORTING SERVICE, INC. (813)224-0224

**Page 3**

    INDEX                                    PAGE NUMBER
    Proceedings                                  4
    Reporter's Certificate                       46

    *Reporter's Note:  See page 18, line 2 for the question
    Mr. Sabharwal requested to be notated.

                REGENCY REPORTING SERVICE, INC. (813)224-0224

**Page 4**

                          P R O C E E D I N G S
        MR. McINTYRE:  Sorry about that.  We had some
    operator error with regard to the conference circuit.
    Would everybody on the line go ahead and make their
    appearance?
        DR. DATTA:  Hello, this is Dr. Datta, Harsh
    Datta.
        MR. McINTYRE:  And just for the benefit -- we
    have a court reporter.  If you could, spell your name.
    When you say your name, then spell it slowly and then
    we'll move on to the next person.
        DR. DATTA:  Hello?  There is a lot of echo.  Can
    you please say it again?
        MR. McINTYRE:  Yes.  I'm not sure how many people
    we have on, but if -- and it's not easy, right, one
    person at a time, but maybe you start and then the next
    person goes.  Say your name clearly, and then if you
    would, spell your name.  We have a -- someone taking
    down notes of the proceeding.
        DR. DATTA:  Okay.  And who is talking right now?
        MR. McINTYRE:  I'm sorry.  This is Richard
    McIntyre.  I'm Suren's attorney.
        DR. DATTA:  Richard.  How do you spell last name?
        MR. McINTYRE:  McIntyre, M-C-I-N-T-Y-R-E.  And
    we'll put our names on.  We'll do all the phone people

                REGENCY REPORTING SERVICE, INC. (813)224-0224

Memantine 000005

**Page 9**

MR. SASLOW: So yes, Suren is standing in for Anna today as secretary, presiding over the meeting.

MR. SABHARWAL: Well, was there an official change of documentation that was voted on for Suren to become the secretary --

MR. SASLOW: No.

MR. SABHARWAL: -- to preside over this meeting? Because we didn't get that.

MR. SASLOW: No.

MR. SABHARWAL: Okay. All right. Go ahead. I didn't mean to interrupt.

MR. SASLOW: Okay. So, Dean, you have the floor.

MR. KENT: Sure. Yeah. Dean Kent from the Trenam law firm in Tampa. We're a litigation and business firm in Tampa and St. Pete only of approximately 95 attorneys. I've been practicing in this area since 2000, and I do a lot of work in the corporate space, intellectual property as well.

I have been engaged by Nexgen Memantine to determine to what extent it may have claims -- corporate claims against any of the shareholders and/or principals of the entity in connection with past dealings and more specifically the notice of this meeting in connection with potential claims against Gajan Mahendiran in connection with a $1.5 million note

**Page 10**

that was outstanding to Nexgen Memantine that was ultimately canceled and/or resolved in favor of him obtaining ownership in Westminster Pharmaceuticals, which I had an understanding had no ownership from Nexgen Memantine.

So essentially, there was a $1.5 million note between Mr. Mahendiran flowing back to Nexgen Memantine that was resolved for no consideration or assets or future interest back to Nexgen Memantine in exchange for Mr. Mahendiran obtaining ownership -- a hundred percent ownership or a larger percentage of ownership in Westminster Pharmaceuticals.

Based upon that, we believe that a further investigation into the matter is required and to potentially file suit to seek the return or appropriate documentation of those assets for the benefit of the shareholders. Whether that be through a demand letter and/or a suit and whether that is brought locally or somewhere else based upon personal jurisdictional issues are yet to be determined. But based on the cursory investigation from a larger point of view, it seems as though there was a large asset of the company that was wiped clean in exchange for essentially no consideration back to Nexgen Memantine or its shareholders for the resolution of that debt.

**Page 11**

MR. SABHARWAL: Dean, this is Keeto. Are you done or can I respond?

MR. KENT: Sure, you can go ahead.

MR. SABHARWAL: Okay. This is Keeto Sabharwal. I am litigation counsel for Westminster Pharmaceuticals and for Gajan Mahendiran. I come from the Washington, DC law firm of Pillsbury, Winthrop. We are an international firm of 700 lawyers. I specialize in all types of litigation, particularly patent litigation, IP litigation.

And first and foremost, I assume that, Dean, you will be producing a copy of this alleged $1.5 million note to all the shareholders and you will verify that there were no other documents that were transacted between Mr. Ajjarapu and Dr. Mahendiran before you satisfy your Rule 11 obligation as to proceed with this lawsuit; is that correct?

MR. KENT: First off, I disagree. I don't know if my -- the scope of my representation would entail any personal or contractual dealings between Suren individually and Mr. -- and your client, Mr. Mahendiran. My role is limited to representation of Nexgen Memantine. So to the extent there's, yeah, agreements between and among those --

MR. SABHARWAL: Okay.

**Page 12**

MR. KENT: -- anything involving my client, Nexgen Memantine, I will gladly produce. And to the extent --

MR. SABHARWAL: Great.

MR. KENT: Yeah, yeah.

MR. SABHARWAL: Great. And we'll get that when?

MR. KENT: Sometime in the near future.

MR. SABHARWAL: Okay. I'd also like to point out for the record since the court reporter is on the phone, for the benefit of all the shareholders, that this is not the first time Mr. Ajjarapu has tried to get into Westminster. Here's the facts and they are undisputed. The facts are as follows: On a certain date, Mr. Ajjarapu for consideration conveyed his entire ownership interest to Gajan Mahendiran for the sole and exclusive ownership of Westminster Pharmaceuticals. Subsequent to that, I have received, me, Keeto Sabharwal, has received several communications from the McIntyre law firm claiming to have some sort of alleged wire transfers which show that Mr. Ajjarapu somehow has some sort of residual interest.

I have responded with documentation showing that Dr. Mahendiran has a hundred percent ownership, and I challenge members of the McIntyre law firm to produce

## 13

1  some sort of documentation rebutting that.  That
2  occurred about four months ago.  Since that time,
3  nothing has happened.
4      The fact is that Nexgen Memantine, maybe
5  unbeknownst to some of the lawyers on the phone, has
6  absolutely nothing to do with Westminster.  They're
7  separate and complete transactions.  And this is
8  nothing more than a transparent attempt by Mr. Ajjarapu
9  to get the benefit of Westminster Pharmaceuticals.
10     Mr. Ajjarapu -- and I want to put this on the
11 record.  Mr. Ajjarapu has been taking funds from one
12 entity and transferring it to another.  And that -- and
13 I know this because I have a good faith reason to say
14 this because that is what my client has told me.  So if
15 you guys want to go down this road and institute any
16 litigation, the very first thing we're going to do is
17 serve a whole battery of discovery requests seeking
18 every financial transaction that Mr. Ajjarapu has been
19 involved with with the following entities, including,
20 but not limited to, G&S Coal, Nexgen, Nexgen Memantine,
21 the Westminster, and the current Trxade company that he
22 operates.
23     Mr. Ajjarapu told Dr. Mahendiran on several
24 occasions that his name cannot even be on Nexgen
25 Memantine because he has fiduciary obligations to
REGENCY REPORTING SERVICE, INC. (813)224-0224

## 14

1  Trxade.  Nevertheless, under -- we are now sitting here
2  and Mr. Ajjarapu has appointed himself secretary in
3  contravention of his fiduciary obligation.  It is also
4  curious that this individual Annapurna or whatever this
5  person's name is is not on the call.  It's also
6  curious, gentlemen, that Dr. Mahendiran, his name is
7  listed as a director when he never even knew about
8  that.
9      This entire transaction is a fraud.  And if
10 anybody tries to institute any action, I am going to
11 file counterclaims against not only Mr. Ajjarapu but
12 the lawyers who obviously did not meet the Rule 11
13 obligations.
14     MR. McINTYRE:  Are you through?
15     MR. SABHARWAL:  I'm done.
16     MR. KENT:  And I can briefly respond --
17     MR. McINTYRE:  Real quick.
18     MR. KENT:  Yeah.
19     MR. McINTYRE:  So, Keeto, I wouldn't think you
20 would be adverse to the company conducting an
21 investigation.  It sounds like you're all about getting
22 to the bottom of whatever transactions Memantine was
23 involved in.  You know, you said that they're
24 undisputable transactions, so, you know, there
25 shouldn't be any disputes about what happened.  And
REGENCY REPORTING SERVICE, INC. (813)224-0224

## 15

1  frankly, if you're right, Mr. Kent's investigation will
2  conclude that there's nothing there to pursue.  But at
3  least the fiduciary duty --
4      MR. SABHARWAL:  But --
5      MR. McINTYRE:  Excuse me, Keeto.  Let me finish,
6  please.  At the least the fiduciary duties --
7      MR. SABHARWAL:  I --
8      MR. McINTYRE:  Excuse me for a second.  -- will
9  be discharged and everyone will know what happened.
10 And obviously, if there's disputes between Mr. Ajjarapu
11 and Mr. Mahendiran, those can be resolved between them
12 separately, but that doesn't really involve Memantine.
13     If there are Memantine assets that need to be
14 protected, that's what Mr. Kent is here to do.  He'll
15 obviously disclose the results of their investigation.
16 They'll make recommendations to pursue litigation or
17 whatever channels they choose.  And I think anybody
18 that's a shareholder would want to hear what their
19 options are before deciding summarily not to proceed.
20 That's just my opinion, but I'll obviously leave it to
21 Mr. Kent to recommend what he sees fit.
22     MR. KENT:  Sure.  And then that's --
23     MR. SABHARWAL:  Let me -- was that Richard that
24 was speaking, by the way?
25     MR. KENT:  It was.
REGENCY REPORTING SERVICE, INC. (813)224-0224

## 16

1      MR. McINTYRE:  Yeah, that was me, Richard
2  McIntyre.
3      MR. SABHARWAL:  Richard, you didn't -- one thing
4  I just want you to confirm.  Will you confirm for me,
5  however, that members of your law firm have been
6  sending me communications and e-mails alleging that
7  Mr. Ajjarapu has some residual ownership interest in
8  Westminster Pharmaceuticals?  Can you confirm that for
9  people on the call?
10     MR. McINTYRE:  Do you -- look, we've got 25
11 lawyers.  We're not as big as your law firm, but I
12 don't know what correspondence the lawyers in my firm
13 have sent you.  I don't believe I've sent you any
14 correspondence.  If you have a letter that you'd like
15 me to confirm, send it to me and I'll tell you --
16     MR. SABHARWAL:  Absolutely.  I'll send it to you
17 today.
18     MR. McINTYRE:  -- yes or no, we didn't.  Right?
19 And obviously --
20     MR. SABHARWAL:  I'll send it to you today.  And
21 one other thing --
22     MR. McINTYRE:  -- copy Mr. Kent.  Keeto --
23     MR. SABHARWAL:  Can somebody tell me what the
24 relationship is between Nexgen Memantine and
25 Westminster Pharmaceuticals?  I can't figure that out
REGENCY REPORTING SERVICE, INC. (813)224-0224

Memantine 000008

17

1  because I don't know that anybody on this call has
2  standing to do anything with respect to Westminster
3  Pharmaceuticals.  So somebody needs to tell me what the
4  relationship is between Nexgen Memantine and
5  Westminster Pharmaceuticals, otherwise, this entire
6  thing is a fraud because nobody on this call has
7  standing.
8       MR. McINTYRE:  Keeto, I think you're
9  misunderstanding -- I think you're misunderstanding
10 what Mr. Kent is saying and what his purpose is.  To
11 the extent that Nexgen Memantine has any claims which
12 would constitute assets of the company or any interests
13 in Nexgen -- I'm sorry -- Westminster or any other
14 assets, his job is to investigate that and determine
15 whether or not Nexgen Memantine assets went outside of
16 the corporation for no consideration or less than
17 reasonable equivalent value and make a report on that
18 and then take the necessary steps to protect Nexgen
19 Memantine.  It's not Westminster --
20      MR. SABHARWAL:  You didn't answer the question.
21      MR. McINTYRE:  Does that answer your question?
22      MR. SABHARWAL:  No, it does not.  I just asked
23 you, Richard, what -- the specific topic of this call
24 was the -- whether to institute litigation against
25 Dr. Mahendiran relating to -- and I quote -- relating

REGENCY REPORTING SERVICE, INC. (813)224-0224

18

1  to Westminster Pharmaceuticals.  So I'm asking you for
2  the third time:  *What allegation, what belief, what*
3  *evidence do you guys have of any linkage between Nexgen*
4  *Memantine and Westminster Pharmaceuticals?*  I want the
5  court reporter to note this specific part on the
6  record.
7       MR. McINTYRE:  The court reporter is taking
8  everything down, so --
9       MR. SABHARWAL:  Good.
10      MR. McINTYRE:  -- I don't --
11      MR. SABHARWAL:  Please answer my question.
12      MR. McINTYRE:  She's not selectively recording
13 parts of the meeting.
14      MR. SABHARWAL:  Thank you.  Thank you.
15      MR. McINTYRE:  If you want her to put this in
16 italics or bold, she can certainly do that.
17      MR. SABHARWAL:  Wonderful.
18      MR. McINTYRE:  Dean, do you want to answer his
19 question?
20      MR. KENT:  Sure.
21      MR. SABHARWAL:  That will help it read better.
22 Go ahead.
23      MR. KENT:  And, Keeto, yeah, this is Dean Kent
24 from the Trenam firm.  And again, I'm -- I don't need
25 to play referee here, but essentially, my role is not

REGENCY REPORTING SERVICE, INC. (813)224-0224

19

1  to come in and put blinders on and favor one
2  shareholder or another.  I'm trying to look at all of
3  the information in a fair and unbiased way and give
4  full and fair disclosure of what we believe the claims
5  to be.  ==Whether those claims are acted upon by the==
6  ==shareholders or not is up to the shareholders==.
7       You know, I don't believe there's anything right
8  now in the context of a Nexgen Memantine shareholder
9  meeting that has anything to do with Westminster
10 Pharmaceuticals other than the kind of peripheral
11 discussion of the fact that a $1.5 million note that
12 was owed to Nexgen Memantine from your client was
13 essentially resolved by him obtaining an interest in a
14 separate entity that was Westminster Pharmaceuticals,
15 which I don't believe you'll dispute, or I think that's
16 what your summary of undisputed facts earlier were kind
17 of attested to.
18      But, you know, to the extent there's a clawback
19 procedure or there's something like that, that that
20 would be discussed.  If there is no relevant or
21 legitimate claim to be brought, we'll report that as
22 well.  But, you know, we're not on some witch hunt
23 here, but we're essentially being tasked to look at the
24 facts as we're aware of them.
25      To the extent you've got something you want to

REGENCY REPORTING SERVICE, INC. (813)224-0224

20

1  share with me, share it with me.  I'll give you my
2  contact information.  I'm not going to avoid looking at
3  something and I'm not going to ignore information
4  unless it's got a -- you know, there's a reason for us
5  to ignore it, then we don't believe it to be credible
6  or fraudulent.
7       But our job is to protect the interest of the
8  shareholders and to protect the assets of Nexgen
9  Memantine.  Whether that's investigating further,
10 filing suit, making recommendations, or saying that
11 ultimately we don't believe a claim exists, that's why
12 we're here.
13      MR. SABHARWAL:  All right, Dean.  That was very
14 well said and I appreciate it.  I also appreciate your
15 acknowledgement about the peripheral nature --
16 potentially peripheral nature between Nexgen Memantine
17 and Westminster Pharmaceuticals.
18      And I'm going to make this following proposal.
19 And, gentlemen, the reason that I am a little bit
20 annoyed by this is because there's a little bit of
21 harassment going on here because this is the third time
22 that Dr. Mahendiran has been badgered by -- with some
23 allegation relating to Westminster Pharmaceuticals.
24      But I'll tell you what.  Let's put all of the
25 pejoratives aside and let's agree on the following:

REGENCY REPORTING SERVICE, INC. (813)224-0224

Memantine 000009

## Page 21

1  Why don't the lawyers get on the phone, get all the
2  documents together, and then we will talk about it,
3  okay, outside the presence of anyone else.  And if
4  there is some transaction that I'm not aware of, I will
5  tell you as my obligation as an officer of the court
6  that I will acknowledge it and I'm sure that you will
7  do the same and that way we can put this thing to bed
8  once and for all.  Does that sound reasonable?
9         MR. McINTYRE:  If what you're saying is --
10        DR. JAIN:  Can I say something?
11        MR. McINTYRE:  Yeah, go ahead.
12        DR. JAIN:  Can I say something?  This is Jitendra
13 Jain.  I'm one of the shareholders that invested money
14 in Nexgen Memantine.  So it's been two and a half years
15 and I don't know what the structure of this company is
16 yet.  Who are the officers?  What are their roles?
17 What obligations have they fulfilled to meet all the
18 necessities of it being a corporation?  We've never
19 gotten a single report from anybody.
20        So before we agree to anything that you're doing
21 on behalf of Westminster or Nexgen, shouldn't the
22 shareholders be informed of all the information?  Where
23 did all the money we invested go?  Who's keeping up
24 with the bank account?  Where are the bank reports?
25        MR. McINTYRE:  So let me say something quickly.

## Page 22

1         DR. ARORA:  This is Balvant Arora.
2         MR. McINTYRE:  Let me just make a quick response.
3         DR. ARORA:  This is Balvant Arora.
4         MR. McINTYRE:  Let me just say something quickly.
5  This meeting was noticed up -- to answer half of your
6  question, this is a special meeting solely noticed up
7  for the purposes of investigating what you just said.
8  Where did the money go?  And if it's recommended by the
9  Trenam -- if Trenam recommends any kind of an action to
10 pursue money that's left the company, they would
11 provide a report.  Keeto has offered to provide
12 information on behalf of Gajan and possibly
13 Westminster.
14        Obviously, Mr. Kent will take all of the
15 information that he can get and work with Keeto to get,
16 you know, everything he possibly can.  He'll also work
17 with Suren to get all the information he can get from
18 Suren and then he'll come up with a recommendation for
19 the benefit of Nexgen Memantine.
20        With regard to officers, directors, corporate
21 structure, and all those things, I would suggest you
22 guys schedule -- and Suren is nodding that he will
23 schedule a general shareholders' meeting for the
24 purposes of dealing with those issues because that's a
25 very legitimate concern to raise.  It seems like

## Page 23

1  there's some things to get in order with regard to the
2  general corporate affairs of the company.
3         But for this meeting, the purpose is to at least
4  find out are there any -- you know, did any money leave
5  the company that shouldn't have?  If so, why?  What's
6  the explanation?  What are the documents?  And what
7  does impartial counsel recommend with regard to if
8  money did leave, trying to get it back, if that's
9  appropriate.  And so I think that's --
10        DR. JAIN:  So in that situation -- this is
11 Jitendra Jain -- I move that we don't make any
12 decisions or do anything at this meeting until the
13 general shareholder meeting is done and all the
14 shareholders are informed of all the information
15 because we have nothing as far as information to go by
16 before we can vote or take any action.
17        MR. McINTYRE:  Okay.  So --
18        DR. ARORA:  And I agree.  This is Dr. Arora.  I
19 also agree with what Dr. Jain has said.  We have not
20 been aware of anything since the time we invested the
21 money.  And I would concur with what Dr. Jain has said.
22        MR. McINTYRE:  So --
23        DR. DATTA:  This is Dr. Harsh Datta.  And it
24 looks like fairly a lot has been happening and we were
25 kept in the dark, that's what it seems like, for one

## Page 24

1  reason or the other.  Now, at this meeting, we didn't
2  even know why this meeting was being called for.  We
3  didn't even know that there were going to be attorneys
4  from both sides and who was definitely going to be
5  attending the meeting and all that.  I think there is a
6  lot for us to know before we can move forward with any
7  more further details and discussion.  We need to be
8  filled in with a lot of information.
9         MR. McINTYRE:  Right.  So what's noticed for this
10 -- those are all valid comments and those are all
11 things that should be accomplished.  For this special
12 meeting, which is a limited meeting, the one matter on
13 for this particular meeting is whether or not the
14 company should initiate an investigation using the
15 Trenam firm into transactions which may have led to
16 corporate assets leaving the company.  And so I think
17 that's all that really can be voted on right now.
18 Having said that, look, you guys are all
19 shareholders --
20        DR. MAHENDIRAN:  I think -- I think -- this is
21 Dr. Gajan Mahendiran.  I'm going to find -- Dr. Balvant
22 Arora, Dr. Jain, and Dr. Harsh Datta, I want to know
23 the initial funding the doctors gave to Nexgen
24 Memantine of -- in excess of $400,000, we would like to
25 know what happened to it.  And secondly, who approved

## 37

1  MR. SABHARWAL: It is.
2  MR. McINTYRE: Alert whoever you want. That's
3  not the purpose of this meeting. But, you know,
4  obviously, no one has asked you to keep anything under
5  your hat, so shout it to the world, do whatever you'd
6  like. But I think we've done the business that we
7  noticed this meeting up for, so let's -- if anyone else
8  has any comments, let's go ahead and make them and then
9  we're going to conclude.
10  MR. AJJARAPU: You want to take a resolution
11  or --
12  MR. KENT: You want to do a formal vote too?
13  MR. McINTYRE: So Mr. Ajjarapu has already voted.
14  The other shareholders on the call, would you like to
15  vote?
16  Hearing nothing --
17  DR. DATTA: Well, I'm sure that --
18  MR. McINTYRE: Sir, do me a favor. Just say your
19  name -- I'm sorry. Say your name so the court reporter
20  has it.
21  DR. DATTA: Yes. This Dr. Harsh Datta. And I'm
22  sure that Dr. Jitendra Jain and Dr. Balvant Arora, they
23  will concur with that. This is the first time we are
24  hearing about all of this, what is going on. Okay.
25  And we have been asked to vote and also at the same

## 38

1  time we have been told that our vote might not have
2  much of any value because of the, you know, 12 percent
3  or whatever.
4  But my thing is that without any information
5  beforehand, without knowing what exactly has been going
6  on or what has happened so far, you are expecting us to
7  vote? I don't know how to proceed with that part.
8  What do you think, Dr. Balvant Arora, and,
9  Jitendra? Hello? Hello?
10  MR. McINTYRE: I'm sorry. Who are you asking for
11  a response --
12  DR. ARORA: Dr. Datta, this is Balvant Arora.
13  DR. DATTA: Yes.
14  DR. ARORA: Yeah, I concur with what you have
15  said, but I feel that this thing is for the
16  investigation and that is what it has been called for.
17  I would request that -- can we get all of the case
18  before we decide on this, or can we get some time on
19  this?
20  MR. AJJARAPU: No.
21  MR. McINTYRE: So just for purposes of the
22  process, Mr. Ajjarapu has voted to move forward with
23  the investigation. So the only question on the table
24  is: Do you vote yes, no, or abstain? And
25  mathematically the vote is already carried, but it's

## 39

1  worth putting on the record.
2  DR. MAHENDIRAN: I think the shareholders are
3  asking for a full account before they make a vote.
4  You're making this unilateral decision.
5  MR. McINTYRE: It's just a matter -- so if you
6  have minority shareholders that say let's postpone the
7  vote until I get more information but the majority of
8  the votes vote to move forward, I'm not aware of a
9  requirement that the vote be deferred. You can
10  actually -- you can move to defer the vote. I can tell
11  you Mr. Ajjarapu would vote against that, so I don't
12  believe that would carry.
13  To save time, just put on the record you vote for
14  or against or abstain. And of course, any results of
15  the investigation will be published to all of you, so
16  you will all get the information. I don't know that
17  anybody would want to stand in the way of an
18  investigation, but if you choose to, then vote against
19  it. If you want to put something on the record about
20  why, like you didn't have enough information to vote
21  for or against, you can say that, but we're just trying
22  to record votes at this point.
23  DR. MAHENDIRAN: If the vote is to recount
24  information of what happened to the money, I think all
25  the investors would be in agreement with you. But if

## 40

1  the vote is to do possible litigation against me, I'm
2  curious that you have the majority person voting
3  against that and everybody else is saying let's figure
4  out the information. I think that's a logical step to
5  take.
6  MR. McINTYRE: Let me be clear. So I'm sorry. I
7  wasn't clear on saying that. The vote on the table is
8  not whether or not to institute litigation. So to say
9  it more clearly, there's no vote for instituting
10  litigation at this point. ==The only vote on the table==
11  ==is to complete an investigation using the Trenam firm==
12  ==and publish that to the board.== And then you-all, the
13  shareholders -- I'm sorry. ==I should've said==
14  ==shareholders, not the board -- the shareholders can==
15  ==decide whether or not to move forward with litigation==.
16  It may be that the recommendation is not to move
17  forward with litigation. The only thing on for a vote
18  today is whether Trenam does an investigation to figure
19  out what happened to the money that was put into Nexgen
20  Memantine and publish that report so that you guys can
21  figure out what happened.
22  UNIDENTIFIED SPEAKER: How much money was put in
23  on December --
24  UNIDENTIFIED SPEAKER: Sorry?
25  MR. McINTYRE: I don't know. At this point,

Memantine 000014